<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| JAMES E. DOUGLAS, | : | Civil No.: 11-406 (JBS) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| WARDEN DONNA ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**APPEARANCES:**

> JAMES E. DOUGLAS, Petitioner <u>Pro</u> <u>Se</u>
> #09394-032
> F.C.I. Fort Dix
> East P.O. Box 2000
> Fort Dix, NJ 08640
>
> JOHN ANDREW RUYMANN, AUSA
> OFFICE OF THE U.S. ATTORNEY
> 402 East State Street, Suite 430
> Trenton, New Jersey 08608
> Counsel for Respondent

**SIMANDLE,** District Judge

On or about January 24, 2011, petitioner, James E. Douglas ("Petitioner"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges sanctions imposed as the result of a prison disciplinary infraction. Petitioner asks the Court to expunge the disciplinary sanctions imposed against petitioner. The named respondent is FCI Fort Dix Warden Donna Zickefoose. Respondent answered the petition on

March 24, 2011, and provided a copy of the pertinent
administrative record.  (Docket Entry No. 8).  On May 10, 2011,
Petitioner filed a traverse or objections to the Warden's answer.
(Docket Entry No. 11).

## I.  BACKGROUND

Petitioner challenges a June 6, 2007 prison disciplinary
finding, which resulted in the loss of 41 days good conduct time
("GCT") and telephone privileges for one year.  Petitioner seeks
to have the disciplinary record expunged and his GCT restored.

Petitioner is presently serving a 131-month prison sentence
imposed by the United States District Court for the Eastern
District of Kentucky, on August 23, 2005, following his
conviction for conspiracy to distribute crack cocaine, in
violation of 21 U.S.C. § 846.  Petitioner's projected release
date is May 15, 2015, assuming he receives all good conduct time
("GCT") available to him under 18 U.S.C. § 3624(b).  (See
Declaration of Tara Moran, Exhibit 1).

On September 16, 2005, Petitioner was designated to serve
his federal sentence at the FMC Lexington in Lexington, Kentucky.
(Moran Decl., Ex. 3).  The incident at issue in this habeas
petition occurred in 2007 at FMC Lexington.  In particular, on
June 8, 2007, Petitioner was issued an incident report, number
1607818, for possession of a hazardous tool, Code 108, based on
the discovery of a cell phone charger in his assigned cell on

2

March 2, 2007.  (Moran Decl., Ex. 4 [Incident Report]).  In particular, the Incident Report reads:

> (Date: 06-08-2007 2:30 p.m.  Staff became aware of incident) On Friday, June 8, 2007, an SIS[1] investigation concluded which revealed you, inmate James Douglas #09394-032, possessed a Pantech mobile travel (cell phone) charger within the confines of this institution.  Specifically, on March 2, 2007, the SIS office monitored a recorded call made by you, to (859) 624-0677, on February 18, 2007, at 9:47 a.m.  The pursuant conversation revealed you placed a separate call to (859) 624-0677 on February 18, 2007, prior to the 9:47 a.m. call.  However, INTRUDR call records clearly document only one call made by you to (859) 624-0677 on February 18, 2007.  As a result, the other call could have only been accomplished through the use of a non-inmate phone.  Additionally, a search of your room (Y05-303U) was conducted subsequent to the monitoring of your February 18, 2007 call.  During the search, a Pantech mobile travel charger was found in the four man room (Y05-303U) you occupied on Younity Unit.

(See Moran Decl., Ex. 4 at ¶ 11).

The incident report was prepared on June 8, 2007, at 2:30 p.m., and delivered to Petitioner on June 8, 2007 at 6:35 p.m. (Moran Decl., Ex. 4 at ¶¶ 12-16).

The incident report indicates that an investigation or interview of Petitioner began on June 12, 2007 at 6:26 p.m.  The investigating officer read Petitioner his rights.  Petitioner stated that he understood his rights and declared that "I am innocent of all charges in this incident report."  The interview concluded at 6:35 p.m. and the investigating officer referred the matter to the Unit Disciplinary Committee ("UDC") and stated that

---

[1]  "SIS" refers to the Special Investigative Service.

Petitioner would remain in administrative detention.  (Moran Decl., Ex. 4 at Part III- Investigation, ¶¶ 22-27).

The initial hearing was conducted before the UDC on June 14, 2007.  (Moran Decl., Ex. 4 at ¶ 21).  The hearing was held past the typical three working day time period because the incident report was not released to the UDC by the SIS until June 13, 2007.  (Moran Decl., Ex. 5 - "Advisement of Incident Report Delay(s)," dated and signed June 14, 2007).  At the UDC hearing, Petitioner denied the charge and again stated that he was innocent.  (Moran Decl., Ex. 4 at ¶ 17).  The UDC recommended loss of the maximum amount of good conduct time ("GCT"), 30 days disciplinary segregation and loss of commissary, and referred the incident report to the Disciplinary Hearing Officer ("DHO") for disposition.  (Moran Decl., Ex. 4 at ¶ 20).

On June 14, 2007, Petitioner was advised of his rights before the DHO.  Petitioner requested a staff representative at the DHO hearing, but did not ask for any witnesses at that time. (Moran Decl., Ex. 6 - Notice of Discipline Hearing Before the Disciplinary Hearing Officer).  However, the DHO hearing was not held on June 14, 2007 because the incident report was rewritten. (Moran Decl., Ex. 7 - rewritten Incident report).

On July 19, 2007, Petitioner was issued the rewritten incident report.  The reporting employee, James W. Buckner, Special Investigation Technician, stated as follows:

4

> This is a re-write of Incident Report #1607818, originally written on July 11, 2007.  On Friday, March 2, 2007, at approximately 8:30 a.m., a search of your assigned room (Y05-303U) in Younity Unit was conducted.  During the search, staff recovered/seized a Pantech mobile travel (cell phone) charger.  The cell phone charger was found inside a bag on top of inmate George Poteat's locker within the room.  On July 10, 2007, additional information was received which necessitated the rewrite of this report as well as the writing of three additional Incident Reports associated with this incident.

(Moran Decl., Ex. 7 at ¶ 11).

The rewritten incident report was completed on July 19, 2007, at 8:30 a.m., and was delivered to Petitioner at 3:47 p.m. on the same day.  (Moran Decl., Ex. 7 at ¶¶ 12-16).  Petitioner was read his rights and told the investigating officer that he was innocent of the charges.  (Id., ¶¶ 23-24).

The initial UDC hearing was held on July 24, 2007.  (Moran Decl., Ex. 7 at ¶¶ 17-21).  At the UDC hearing, Petitioner was given another "Advisement of Incident Report Delay(s)", which indicated that the report was delayed due to a significant ongoing parallel investigation that was completed on July 11, 2007, and the rewrite was completed July 19, 2007.  (Moran Decl., Ex. 8).  Petitioner denied the charges at the UDC hearing and told the UDC that he was innocent.  (Moran Decl., Ex. 7 at ¶ 17).  The UDC recommended that the matter be referred to the DHO for hearing.  (Id., Ex. 7 at ¶ 20).  Also, on that date, Petitioner requested a staff representative to represent him at the DHO

hearing, as well as witnesses to be called to testify on his behalf at the DHO hearing.  (Id., Ex. 9).

The DHO hearing was held on August 16, 2007.  (Moran Decl., Ex. 10 - DHO Report).  Petitioner's staff representative was present.  The DHO report summarized Petitioner's statement at the hearing as follows: "I'm innocent.  The cell phone charger is not mine and I don't know who the charger belongs to.  I don't know anybody who would want to set me up."  (Id., Ex. 10 at Section III).

An inmate witness also testified on Petitioner's behalf at the DHO hearing.  The witness stated: "I know nothing about a cell phone or cell phone charger.  There are other inmates who have access to Douglas' room because there are no locks on the doors.  Douglas has a bathroom in his room and other inmates not assigned to the room use the bathroom."  (Id., Ex. 10 at Section III.C.2).  The DHO denied Petitioner's request for other witnesses to testify at his hearing on the following grounds:

> J. Buckner, SIS Tech, was the report writer and his knowledge of the incident was summarized in Section Eleven of the Incident Report and further clarification on the issue was not necessary.
>
> Inmates D. Outlaw #04035-028, G. Poteat #22855-001, were not called by the DHO because the information you requested they attest to had no relevance to the hearing.  That is, you stated each witness would be able to testify, "You were not in the room when the cell phone charger was found."  Whether or not you were in the room when the cell phone charger was found by staff, does not change or discredit what the officer found or where the officer found it.  Additionally, there was no evidence that any of the occupants who were

6

assigned to the room at the time of the incident were present when the staff found the cell phone charger.

As part of your written statement presented to the DHO, you requested an outside witness, Virgie Douglas (your wife) to be called as a witness. The DHO also considered her testimony irrelevant. Again, any testimony provided by her does not change or discredit what the officer found or where the officer found it. Furthermore, your submitted questions refer to your initial incident report, not the rewrite.

(Moran Decl., Ex. 10 at Section III.C.4).

At the conclusion of the hearing, the DHO found that

Petitioner had committed the act as charged. (Moran Decl., Ex.

10 at Section IV.A). The DHO set forth his finding as follows:

... The DHO found you committed the prohibited act of possession of a hazardous tool (cell phone charger), Code 108. The finding is based in part on the written statement of J. Buckner, SIS Tech, who attests that on Friday, March 2, 2007, at approximately 8:30 a.m., a search of your assigned room (Y05-303U), in Younity Unit was conducted. During the search, staff recovered/seized a Pantech mobile travel (cell phone) charger. The cell within the room. On July 10, 2007, additional information was received which necessitated the rewrite of this report as well as the writing of three additional incident reports associated with this incident.

I considered the statement of your requested witness, Inmate Moon. He stated, He knew nothing about a cell phone or cell phone charger. He did state that other inmates have access to your room because there are no locks on the doors. He further stated, You have a bathroom in your room and other inmates not assigned to your room use the bathroom.

The DHO showed you and considered as evidence the witness statement of M. Blair, Case Manager, who attests that on March 2, 2007, at 8:20 a.m., SIS Tech J. Buckner contacted him about a possible cellular telephone on Younity Unit. He then requested the assistance of correctional officer Constance Mosley to accompany him to the four man room (303-304) on Younity Unit. At approximately 8:30 a.m., while conducting a shakedown of the room, Officer Mosley discovered a bag with what appeared to be a cellular

telephone charger inside.  The bag was found in plain view
on top of the locker of inmate Poteat.

The DHO showed you and considered as evidence the written
statement of C. Mosley, SOS, who attests at approximately
8:30 a.m., Mr. Blair requested her assistance with a
shakedown.  While searching your room, she found a package
which appeared to be a cell phone charger.  The package was
located out in the open on top of the locker of inmate
Poteat.  No other items were found.

The DHO showed you and considered as evidence two
photographs depicting on Pantech cellular phone charger.

I considered your statement to me during your DHO hearing.
You stated, I'm innocent.  The cell phone charger is not
mine and I don't know who the charger belongs to.  I don't
know anybody who would want to set me up.  However, you
provide no evidence other than you say it is so.  I find
your claim not credible for several reasons.

As I informed you during your hearing, you are responsible
for ensuring your area of responsibility is free of
contraband.  In other words, inmates are expected to ensure
there is no contraband in their room or cells.  The DHO
notes correctional staff conducted a search and found a cell
phone charger concealed in a bag located on top of a locker
inside your cell.  Your daily access to your cell is some
evidence you had constructive possession of the cell phone
charger.  In this case, the charger was reasonably
accessible to you, as it was discovered by staff inside your
cell.  Furthermore, your responsibility for ensuring your
cell was free of contraband established your culpability in
this incident.

In your written statement, you contend "A charger is no more
hazardous than the packaging in which the phone comes in."
I disagree.  The "packaging" of a cell charger cannot charge
a cell phone and make the cell phone operational.  It's more
reasonable to believe a cell phone charger is an integral
component of a cell phone and without the charging
component, the cell phone itself would become inoperable
after the initial charge and rendered useless.  Thus, a cell
phone charger is considered a hazardous tool.  You also
contend in your written statement that your room has a
community bathroom where any of 200 inmates have access to.
Although you and your witness claimed other inmates had
access to your room and the bathroom inside your room, you

provided no evidence to indicate another inmate would have a reason or a motive to place a cell phone charger in your room.  The DHO notes the charger was concealed in a small bag to avoid detection and you had daily access to the area where the cell charger was found.  It's more reasonable to believe the cell charger belonged to you or one of your three cell-mates; Just as I would believe a pair of tennis-shoes would belong to you or one of your cell-mates if found in your room, and not some anonymous inmate who lived down the hall.  The DHO notes each room om Y05 (D-Wing) has a bathroom inside the room, except for one room.  In the latter case, the inmates assigned to the room with no bathroom are instructed to use the common area bathroom. You provided no evidence other than your statement, and the statement of your witness, that other inmates use your bathroom.  It's reasonable to believe the other inmates on D-Wing use the bathroom inside their room, or the common area bathroom.  There is no reason for inmates not assigned to your room to use your bathroom.  Additionally, you and your cell-mates are responsible for the cleaning of your bathroom and it's not reasonable to believe you would permit any inmate to use it.

I find it relevant neither you or any of your cell-mates claimed ownership of the cell phone charger.  This indicated to me none of you were willing to accept accountability or responsibility for your actions.

Additionally, the DHO notes J. Buckner, SIS Tech, and officers Mosley and Blair have a legal and moral obligation to tell the truth concerning acts of misconduct by inmates. They have absolutely nothing to gain by falsifying their account of this incident.  You on the other hand, are facing disciplinary action and would have reason to falsify your account or minimize your culpability in the incident.  The DHO finds the eye-witness accounts of J. Buckner, C. Mosley, and M. Blair more credible than your account of this incident.

Therefore, the DHO finds the greater weight of the above listed evidence supports you committed the prohibited act of possession of a hazardous tool (cell phone charger), Code 108.

(Moran Decl., Ex. 10 at Section V).

The DHO sanctioned Petitioner to 30 days disciplinary segregation, disallowance of 41 days GCT, one year loss of telephone privileges, and recommended disciplinary transfer. (Moran Decl., Ex. 10 at Section VI).  The DHO Report states that the sanctions were imposed because possession of components of a cell phone in any correctional facility seriously jeopardizes the security of the institution and poses a threat to staff and inmates.  (Id., Ex. 10 at Section VII).

A copy of the DHO Report was given to Petitioner on August 31, 2007.  (Id., Ex. 10 at Section IX).  Petitioner duly and timely exhausted his administrative remedies in appealing the DHO decision.  On November 30, 2007, the Regional Director denied Petitioner's appeal on the following grounds:

> You appeal the DHO decision of August 16, 2007, for Possession of a Hazardous Tool (Code 108).  You claim the UDC hearing was conducted in an untimely manner.  You allege the DHO did not call your requested witnesses and your due process rights were violated.  You request the incident report be expunged.
>
> P.S. 5270.07, Inmate Discipline and Special Housing Units, provides that the DHO shall consider all evidence presented at the hearing.  The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.  The DHO found that you committed the prohibited act based on the greater weight of the evidence to include the reporting staff member's statement, as accurately and adequately stated in Section V of the DHO report, and we find no reason to elaborate further.
>
> P.S. 5270.07, also provides that staff shall provide each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's

10

involvement in the incident.  You received the incident
report within the 24 hour time frame, on the date the SIS
investigation was concluded and the incident report was
completed and you received another copy on the same date the
incident report was rewritten.  When it appears that an
extension of time limits is necessary , the UDC is to ensure
that the inmate is advised of the delay, including, where
appropriate, the reasons for the delay.  The Warden signed a
memorandum authorizing the discipline process to continue
beyond the ordinary time frames.  This memorandum cited the
various reasons for the delay.  You do not provide, nor do
we find, any evidence that your defense of the charges
against you was hindered in any way due to this procedural
delay.

P.S. 5270.07, provides that witnesses must provide relevant
testimony.  The DHO shall document reasons for declining to
call requested witnesses in the DHO report.  The DHO did not
call your requested inmate witnesses as he deemed the
testimony to be irrelevant and he determined that the
requested staff witness' testimony to be accurately
summarized in the incident report and was adverse.  A review
of the disciplinary record revealed that the DHO properly
detailed the reason for not calling your witnesses.

We find the require disciplinary procedures were
substantially followed, the evidence supports the DHO's
finding, and the sanctions were appropriate for the offense.

You do not provide, nor do we find, any evidnece that your
due process rights were violated.

(Moran Decl., Ex. 2).

Petitioner thereafter appealed the Regional Director's

ruling to the National Inmate Appeals.  The Administrator Harrell

Watts denied the appeal in a written decision dated February 28,

2008.  (Id.).  Specifically, Watts found:

You appeal the August 16, 2007, decision of the Discipline
Hearing Officer (DHO) in which you were found to have
committed the prohibited act of Possession of a Hazardous
Tool (code 108).  You contend the incident report (IR)
should be expunged for lack of evidence, untimely rewrites

11

of the IR, and an untimely unit disciplinary committee
(UDC).

Our review of your disciplinary proceedings indicates
substantial compliance with Program Statement (PS) 5270.07,
Inmate Discipline and Special Housing Units.  We reviewed
the evidence and found the DHO's decision was reasonable and
based upon the greater weight of the evidence as detailed in
Section V of the DHO report.  Our review revealed staff
substantially respected and preserved your due process
rights, adhered to the required disciplinary procedures, and
imposed appropriate sanctions as identified in Chapter 4 of
the PS.

You deny responsibility, claiming everyone had access to
your cell.  We are inclined to believe the conclusions drawn
by staff, taking particular note of the DHO's whittling away
of your excuses.  We also considered the findings staff made
when reviewing a recording of your ITS call.  The recording
apparently revealed you had made another call to the same
phone number that day.  Yet, it could not be located in the
ITS records.  This, along with the presence of the cell
phone charger and the fact neither you nor your cell mates
assumed responsibility sufficiently diminished your
credibility, yielding greater weight to the accounty by
staff.

Lastly, the reporting staff are obligated to be truthful and
do not gain anything by submitting false reports.  They are
also obligated to submit accurate statements and correct
reports if necessary.  We find the delays were adequately
explained, discussed, and documented throughout the
disciplinary process.  We note, such delays do not warrant
expungement of an IR and it is quite apparent you did not
experience any hindrances in mustering a defense against the
charge or appealing the decision.  We concur with the DHO
decision you committed the prohibited act.  Accordingly,
your appeal is denied.

(Moran Decl., Ex. 2).

Petitioner filed this habeas petition on or about January

24, 2011.  The Government responded to the petition on March 24,

2011, and attached the relevant administrative record.

12

Petitioner filed a traverse or reply to the Government's answer, on or about May 10, 2011.

The petition asserts that Petitioner's due process rights were violated as follows: (1) Petitioner argues that the incident report was written more than 24 hours after the staff became aware of the alleged violation of Code 108, and that there was insufficient explanation for the delay.  (2) He further claims that his initial UDC hearing did not occur within the required 72 hour time frame under the rules.  (3) Petitioner alleges that he was prevented from calling witnesses at his DHO hearing without adequate explanation.  (4) Petitioner alleges that not all documentary evidence relied upon by the DHO were provided to him at the hearing.  (5) The rewritten incident report was not delivered to Petitioner in a timely manner.  (6) The DHO decision was not based on "some evidence."  (7) Petitioner's double jeopardy rights were violated by the issuance of a second rewritten incident report for the same charge.  (8) Petitioner states that Officer Blair could not take part in the investigation if he was involved in the incident, namely, having found the cell phone charger.  (9) Petitioner was not provided notice that the punishment for the charged misconduct had been increased from a moderate level violation (Code 305) to a greater severity level violation (Code 108), and that this increase

changed the legal consequences of the act affecting his good time credits.

## II.  DISCUSSION

### A.  Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[2]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

---

[2]  United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

B.   Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  <u>Id</u>.

These procedures are intended to meet or exceed the due process requirements prescribed by <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  <u>See</u> <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  <u>Merits of Petitioner's Claims</u>

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S.

CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, Petitioner makes several allegations concerning the timeliness of notice to the charges and the delay in the investigation and completion of the both the initial incident

17

report and the rewritten report, as well as the delay in holding his UDC hearing.  In particular, Petitioner alleges (1)  that the incident report was written more than 24 hours after the staff became aware of the alleged violation of Code 108, and that there was insufficient explanation for the delay; (2) that his initial UDC hearing did not occur within the required 72 hour time frame under the rules; and (3) that the rewritten incident report was not delivered to Petitioner in a timely manner.  The Court finds no due process violations as contemplated under <u>Wolff</u> or <u>Von Kahl</u> with respect to Petitioner's timeliness claims.

In this case, both the initial incident report and the rewritten incident report were completed more than 24 hours after staff became aware of Petitioner's involvement in the incident. Under 28 C.F.R. § 541.15(a), an inmate should receive written notice of the charges against him "ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident."  Here, the cell phone charger was found on March 2, 2007, but the investigation of the incident did not conclude until June 8, 2007.  Once the investigation concluded, the initial incident report was written and delivered to Petitioner on June 8, 2007.  Similarly, the rewritten incident report was delivered to Petitioner in a timely manner.  As indicated by the record, additional information was received concerning the incident on July 10, 2007, which necessitated a re-write of the

18

incident report as well as necessitating preparation of three additional incident reports associated with the incident.  The incident report was rewritten on July 19, 2007 and delivered to Petitioner the same date.

The Court finds no due process violation with regard to Petitioner's notice of these incident reports.  They were plainly delivered to him immediately upon completion of a necessary and careful investigation of the incident.

In addition, the mere fact that Petitioner's UDC hearings were not conducted within three work days from the time staff became aware of Petitioner's involvement did not unduly prejudice Petitioner and deprive him of due process.  Holding a UDC hearing within three work days is not a procedural due process requirement.  See Brown v. Rios, 196 Fed. Appx. 681, 683 (10th Cir. 2006)(even if the UDC hearing was held beyond the three-day time frame, that does not rise to the level of a constitutional deprivation under Wolff).  In this case, Petitioner received two separate notices or "Advisement of Incident Report Delay(s)" that sufficiently explained the reason for having the UDC hearings held beyond the normal time-line.  The record shows that a large scale SIS investigation of the incident was ongoing from February 18, 2007, with new information being received in July 2007, which required a re-write of the incident report.  This careful and

19

lengthy investigation does not, in and of itself, violate any BOP regulations or procedural due process standards.

The Court also finds that the discrepancy of a date in the rewritten incident report is not a due process violation.  In ¶ 11 of the rewritten incident report, it states that the report is a re-write of the original incident report written on "July 11, 2007."  This is simply an obvious typographical error, nothing more.  Typographical errors do not rise to the level of a constitutional deprivation.  See Hairston v. Boyce, 2008 WL 2095771 at *7 (D.N.J. 2008)(citing Morales v. DeRosa, 2005 WL 2217018 at *4 (D.N.J. 2005)).  Moreover, such insignificantly "false" information in the rewritten incident report is not sufficient to establish a due process violation where the inmate has the opportunity to rebut the allegedly false accusations and evidence.  See McKeathan v. Beard, 2009 WL 908710 at *2 (3d Cir. April 6, 2009).  "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."  Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).  Here, Petitioner has had the opportunity to provide evidence and a statement to the investigating officer, UDC and the DHO.  The Court finds no due process violation as a result of the alleged delays.

Petitioner also contends that his due process rights were violated when he was denied the opportunity to call certain witnesses at his DHO hearing.  The Government counters that the DHO correctly denied the additional requested witnesses because they had no relevant testimony, and that such decision did not violate Petitioner's due process rights.

This Court agrees with the Respondent.  The right to call witnesses in a prison disciplinary proceeding is not absolute.  "[I]t is 'circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" Howard v. Bureau of Prisons, 487 F.3d 808, 811 (10th Cir. 2007)(quoting Baxter v. Parmigiano, 425 U.S. 308, 321 (1976) and Wolff, 418 U.S. at 556).  Further, "[i]t is not a denial of due process to deny an inmate an opportunity to present witnesses 'whose testimony would be irrelevant, repetitive, or unnecessary.'" Moles v. Holt, 221 Fed. Appx. 92, 95 (3d Cir. 2007)(quoting Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002).  See also 28 C.F.R. § 541.17(c)("the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. ... The DHO need not call repetitive witnesses").

Here, the DHO documented the reasons for denying Petitioner's three additional witness and SIS Tech Buckner, as

21

required under 28 C.F.R. § 541.17(c).  (Moran Decl., Ex. 10 at Section III.C.4).  In particular, the DHO found that Buckner's knowledge of the incident was thoroughly summarized in the reports.  Further, the testimony of the inmate witnesses as to the fact that Petitioner was not in the cell when the cell phone charger was found would have been irrelevant and repetitive.  Additionally, the testimony of Petitioner's wife was not relevant.  (Id.).

Therefore, this Court finds no merit to Petitioner's claim in this regard.  He does not have an unfettered right to call witnesses at his prison disciplinary proceeding, and the basis for the DHO's denial of these witnesses were reasonable and did not offend due process.

Next, Petitioner argues that the DHO did not provide to Petitioner all of the documentary evidence relied upon at the hearing.  It would appear that Petitioner's objections are based on the staff memoranda and investigative reports that were relied upon by the DHO, other than the incident reports, which were provided to Petitioner, namely, the documentary evidence included the June 8, 2007 memorandum written by J. Buckner, SIS Tech; the March 2, 2007 memorandum written by C. Mosley, SOS; the March 2, 2007 memorandum written by Case Manager Blair; and the telephone account statement dated June 15, 2007.

22

The Court notes that the June 8, 2007 SIS investigative memorandum was marked as "L.O.U. Sensitive" and "F.O.I. Exempt." This memorandum could have been appropriately excluded from Petitioner and marked in the confidential information category of the DHO report.  However, it was shown to Petitioner at the hearing.  Moreover, the pertinent information in the memorandum was included in the incident reports, which Petitioner received well before the DHO hearing giving him sufficient notice of the charges to prepare a defense and present witnesses and evidence.

Likewise, the March 2, 2007 memoranda by both Mosley and Blair were simply an account of the search of Petitioner's cell/room and what was found and seized.  This information was essentially duplicated in the incident reports, and thus was made known to Petitioner through the incident reports.  The information in the telephone account statement also was set forth in the incident reports.  Moreover, all of these documents were shown to Petitioner at the DHO hearing.

Thus, Petitioner was given written notice of the charges and evidence against him well before the DHO hearing, and the documentary evidence was presented to him at the hearing, and memorialized in the DHO report as the evidence presented at the hearing.  Wolff, Von Kahl, and BOP regulations require that an inmate receive advance written notice of the disciplinary charges against him so that he can respond to those charges; however,

there is no requirement that the evidence supporting those charges (such as the SIS investigation or staff memoranda in this instance) also must be provided to the inmate in advance of his UDC and DHO hearings.  See Castro v. U.S. Bureau of Prisons, 2005 WL 2205791 at *3 (D.N.J. Sept. 8, 2005).  This Court finds no due process violation under these circumstances.

Finally, Petitioner asserts that Program Statement 5270.07 states that any staff involved in the incident can not take a significant part in the investigation.  Petitioner thus alleges that it was error for Case Manager Blair to be involved in the investigation since he was one of the staff who found the cell phone charger.  This contention lacks any merit and fails to support a due process claim.  Blair was not involved in the writing of the incident reports.  His memorandum of the search was simply used as a basis for the incident report.  Consequently, there is no procedural due process violation under Wolff or Von Kahl.

Accordingly, this Court concludes that Petitioner has not demonstrated any denial of procedural due process to warrant a grant of habeas relief.

2.  *There Was Sufficient Evidence to Support the Charge*

Petitioner also argues that there was inadequate evidence to support a finding that he violated Code 108, and that the DHO decision was not based on "some evidence."

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the SIS investigation and the reporting officer's description of the incident as set forth in the Incident Reports, which sufficiently detailed the discovery of the cell phone charger, and Petitioner's telephone account

activity, to support the charged violation.  Specifically, the
DHO relied on the photograph of the cell phone charger, the 6-
page SIS investigation memorandum, the staff memoranda regarding
the cell search that resulted in the discovery of the cell phone
charger, Petitioner's statements, and the witness statements.

Petitioner appears to challenge the DHO's decision on two
grounds.  First, that there was no evidence to prove that he
owned the cell phone charger, as he was not in the cell when it
was found and it was a common area open and accessible to his
three cell mates and all other inmates in the wing.  Second, he
appears to suggest that the cell phone charger is not a hazardous
tool and is nothing more harmful than the packaging box for a
cell phone.

There was more than sufficient evidence presented at the
hearing to show that Petitioner had "constructive possession" of
the cell phone charger.  The charger was found in a bag on top of
a locker out in the open in Petitioner's cell.  Not one of the
four cell mates, including Petitioner, admitted to owning the
device.  More importantly, BOP regulations and policy instruct
inmates that it is their responsibility to keep their areas free
of contraband.  See 28 C.F.R. § 541.12, P.S. 5270.07, Inmate
Discipline and Special Housing Unit, Chapter 3 at page 1.  This
policy has been found not to offend due process unless there is
exculpatory evidence that renders the inmate's "possession" of
the contraband so unreliable under the circumstances that

26

_Superintendent v. Hill_'s "some evidence" standard is not met.

See _Donahue v. Grondolsky_, 2009 WL 3754045 (D.N.J. Nov. 2, 2009),
_aff'd_, 398 Fed. Appx. 767 (3d Cir. 2010); _Briggs v. Marberry_,
2008 WL 554927 **8-9 (W.D. Pa., Feb. 28, 2008); _Hamilton v._
_O'Leary_, 976 F.2d 341, 346 (7th Cir. 1992); _Okocci v. Klein_, 270
F. Supp.2d 603, 613 (E.D. Pa. 2003)(noting that "the doctrine has
been extended so far as situations where other inmates claimed
responsibility for contraband fond during cell searches"), _aff'd_,
_Remoi v. Klein_, 100 Fed. Appx. 127 (3d Cir. 2004) _cert_. _denied_,
543 U.S. 1061 (2005); _White v. Kane_, 860 F. Supp. 1075, 1079
(E.D. Pa. 1994), _aff'd_, 52 F.3d 319 (3d Cir. 1994).

Here, Petitioner has not proffered any evidence of
unreliability sufficient to undermine the "some evidence"
standard.  The fact that Petitioner shared a cell with three
other inmates does not "preclude the application of the
constructive possession rule." _Donahue_, 2009 WL 3754045, *6;
_Briggs_, 2008 WL 554927 *9; _see also_ _Bailey v. Nash_, 2005 WL
2300367 ** 1, 3 (M.D. Pa., Sept. 21, 2005)(denying habeas
petition where the weapon was found in the bedpost of an inmate's
two-man bunk bed, inmate was assigned to area less than one
month, area housed six to ten inmates).  Nor does the fact that
his cell or room did not have a lock render the evidence
unreliable.

The evidence relied upon by the DHO clearly shows that a
cell phone charger was found in plain view in Petitioner's cell

to which he had daily access and constructive possession.  The
mere act of possessing and using the cell phones in prison, in
and of itself, circumvents the Inmate Telephone System ("ITS"),
and is sufficient in satisfying the evidentiary standard required
by due process in prison disciplinary proceedings.  And the
undisputed fact that the cell phone charger was found in
Petitioner's locker provided some evidence that Petitioner
constructively possessed the charger.  See Hill, 472 U.S. at
455-457 (where three inmates could have assaulted victim, there
was some evidence that Hill was the assailant); Shelby v.
Whitehouse, 399 Fed. Appx. 121 (7th Cir. 2010)(where Shelby
shared cell with four other inmates and one inmate had admitted
that drugs found in the cell were his, disciplinary decision
finding Shelby guilty of possession was supported by "some
evidence," since collective responsibility among prisoners is not
unconstitutional), cert. denied, 131 S.Ct. 2978 (U.S. June 6,
2011); Flannagan v. Tamez, 368 Fed. Appx. 586, 590 (5th Cir.
2010)(there was "some evidence" where "contraband was found in
[cell] that Flannagan share[d] with only five other inmates");
Hamilton v. O'Leary, 976 F.2d 341, 346 n. 1 (7th Cir. 1992)(where
the most likely scenario was that one in eight prisoners had
access to vent where weapons were found (12.5% probability) and
the record before the disciplinary hearing board showed that
there was a one in four probability, there was "some evidence" of
petitioner's guilt of possession of weapon).  Therefore, because

28

the cell phone charger was found in Petitioner's cell, there was "some evidence" that he possessed the charger, and the DHO's finding that Petitioner committed the prohibited act is not without due process.

As to whether the cell phone charger can be considered a hazardous tool like a cell phone under Code 108, the DHO found that a cell phone charger is an essential charging component to a cell phone to keep it operational. Thus, this Court finds no error in defining a cell phone charger as a tool, because it enables a cell phone to make calls and its only logical purpose is to charge a cell phone for operation. Indeed, the BOP's definition of hazardous tool to include a cell phone charger is not plainly erroneous or inconsistent with BOP regulations. See Hicks v. Yost, 377 Fed. Appx. 223 (3d Cir. 2010)(BOP's definition of hazardous tool in code 108 to include a cell phone is not plainly erroneous or inconsistent with BOP regulations); McGill v. Martinez, 348 Fed. Appx. 718 (3d Cir. 2009)(where officer found a cell phone and a charger in petitioner's cubicle, BOP did not violate due process or abuse its discretion in sanctioning him 40 days of good conduct time for possession of hazardous tool, code 108); Robinson v. Warden, FCI Fort Dix, 250 Fed. Appx. 462, 464 (3d Cir. 2007)("The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations, see Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389 (3d Cir. 2001), and Robinson's conduct clearly falls

29

within Code 108"); <u>Ortiz v. Zickefoose</u>, 2011 WL 1675003 (D.N.J. May 3, 2011)(denying habeas corpus relief who argued that possession of a cell phone was not violation of code 108).  Under these circumstances, this Court rejects Petitioner's argument that the DHO abused its discretion in finding that he committed a code 108 violation.  <u>Id</u>.

Consequently, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." <u>Hill</u>, 472 U.S. at 457. Petitioner has not proffered any evidence of unreliability sufficient to undermine the "some evidence" standard. Accordingly, this Court finds that there was more than sufficient evidence to support the DHO finding that Petitioner had committed the prohibited acts as charged.  Petitioner has failed to proffer any sufficiently credible contradictory evidence.  The procedures enunciated in <u>Wolff</u>, supra, were complied with, and there was "some evidence", in accordance with <u>Hill</u>, <u>supra</u>, to support the DHO's finding of guilt.  <u>See</u> <u>Sinde v. Gerlinski</u>, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proven that he was denied due process or that there was insufficient evidence to

support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

    3.  *Code 108 Violation Properly Applied*

    Petitioner also argues that the Code 108 violation was not properly applied on several grounds.  For instance, he contends that possession of a cell phone charger is more appropriately prohibited under Code 305 - possession of anything not authorized.  Petitioner also claims that the language of Code 108 is too vague to apply to his offense conduct, and that the BOP's treatment of a cell phone and its components as a hazardous tool under Code 108 did not adhere to the administrative rule promulgation procedures under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, et seq.  Finally, he contends that application of Code 108 rather than Code 305 violated his right to equal protection.

    As noted above, courts have upheld an inmate's discipline under Code 108 for possession of a cell phone and/or a cell phone charger, even where the language of Code 108 does not use the term "cell phone."  See Hicks v. Yost, 377 Fed. Appx. 223, 224-25 (3d Cir. 2010)(citing Chong, 264 F.3d at 389); McGill v. Martinez, 348 Fed. Appx. 718, 721 (3d Cir. 2009)(the BOP's "interpretation is perfectly consistent with Code 108's prohibition of items 'hazardous to institutional security[]'"); Robinson v. Warden, FCI Fort Dix, 250 Fed. Appx. 462, 464 (3d Cir. 2007)(same - Code 108 violation for possession of cell phone

in 2005).  See also United States v. Blake, 288 Fed. Appx. 791, 794-95 & n.4 (3d Cir. 2008)(rejecting void for vagueness argument where inmate found guilty of possession of cell phone and charger); Ausberry v. Grondolsky, 2008 WL 4225174, *5 (D.N.J. Sept. 9, 2008)(upholding application of Code 108 to possession of MP3 player because of its clear potential to disrupt the security and orderly running of the institution); Persaud v. Samuels, 2007 WL 1959275, *1 (D.N.J. July 3, 2007)(possession of cell phone charger in 2006).

Thus, this Court finds that Code 108 was appropriately applied to Petitioner's conduct, and that there was sufficient notice that possession of a cell phone and/or charger was prohibited.  Indeed, as the above case law demonstrates, Code 108 has been consistently applied to the BOP inmate population at large for the past few years.  Moreover, cases upholding the recognition of cell phones as hazardous tool under Code 108 have specifically acknowledged that these devices and related components are frequently used by inmates to circumvent inmate phone monitoring, and to assist inmates in escaping from prison by keeping inmates informed of special counts and staff locations, which poses a serious threat to the security of the institution, its inmates and staff.  See Robinson, 250 Fed. Appx. at 464, cited in Curry v. Zych, 2010 WL 864486, *4 (E.D. Mich. March 9, 2010)(citing cases).

Further, the BOP's inclusion of cell phones and related components as hazardous tools under Code 108 is simply an expanding interpretation of what constitutes a hazardous tool so that the BOP can effectively address the evolving ways inmate conduct and the introduction of contraband can threaten institutional safety and security.  Such an interpretation is not a legislative rule, and thus is not subject to the notice-and-comment requirement of the APA, as suggested by Petitioner.  See Ausberry, 2008 WL 4225174 at *4 (BOP disciplinary guidelines are not subject to the notice and comment requirements of the APA because they are internal agency guidelines that are subject to being altered at will), citing Reno v. Koray, 515 U.S. 50, 61 (1995); Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (rejecting prisoner's argument that BOP's change in policy was invalid because it was not promulgated in accordance with the APA, as agency guidelines are "promulgated internally and may be altered at will by the BOP"); Koray v. Sizer, 21 F.3d 558, 562 (3d Cir. 1994)(internal agency guidelines may be altered by the BOP at will and are not subject to the notice and comment requirements of the APA), rev'd on other grounds sub nom Reno v. Koray, 515 U.S. 50 (1995).

Petitioner also asserts that the BOP violated his right to equal protection because a Code 108 violation was reduced to a Code 305 violation for similar conduct by other inmates.  In particular, Petitioner cites to Neagle v. Grondolsky, 2010 WL

33

2546021 (D.N.J. June 18, 2010).  However, in <u>Neagle</u>, and in <u>Hudson v. Zickefoose</u>, 2010 WL 4746220 (D.N.J. Nov. 15, 2010), the courts found that even though the habeas petition regarding the Code 108 disciplinary action was rendered moot where the BOP re-sanctioned the inmates under Code 305, petitioner's original challenges would be subject to dismissal.  Specifically, in <u>Neagle</u>, "[p]etitioner allege[d] that he was deprived of liberty without due process of law because he has lost good conduct days as a result of the sanctions imposed by being charged with a Code 108 infraction for the possession of a cell phone which carries stronger legal consequences than a Code 305 violation."  <u>Neagle</u>, 2010 WL 2546021 at *3.  Although the BOP's answer indicated that it had reduced the infraction to a Code 305 violation, the court dismissed the petition on the merits, finding that the BOP did not violate Petitioner's federal rights by sanctioning him for a code 108 violation.

The Equal Protection Clause requires that all people similarly situated be treated alike.  <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him.  <u>See</u> <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987); <u>Whitus v. Georgia</u>, 385 U.S. 545, 550 (1967).  "Thus, to prevail under the Equal Protection Clause, [Petitioner]

must prove that the decisionmakers in his case acted with discriminatory purpose." McCleskey, 481 U.S. at 292.

The problem with Petitioner's equal protection claim is that, other than alleging that the BOP reduced the severity of the disciplinary charge for cell phone possession for others, he has alleged nothing to indicate that his disciplinary sanction was the result of purposeful discrimination. Accordingly, his equal protection claim fails. See Millard v. Hufford, 2011 WL 681091 (3d Cir. Feb. 28, 2011)("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination .... Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim"). See also Bouchard v. Shartle, 2011 WL 2559530 (D.N.J. June 27, 2011).

As the Petition, traverse, and attachments do not show that the final administrative decision in this insatnce concerning the Code 108 charge violated the Constitution, laws or treaties of the United States, this Court will dismiss the Petition.

4.   *The Sanctions Imposed Were Not An Atypical Or Significant Hardship on Petitioner.*

The Government contends that the sanctions as imposed in this case were within the range of sanctions available for the violations of Code 108, Greatest Category offense, and did not impose an atypical or significant hardship on Petitioner.

This Court finds that the sanctions imposed, including the loss of privileges, are within the range of sanction listed under 28 C.F.R. §541.13(a)(1).  Moreover, the loss of privileges sanction do not work an "atypical and significant hardship" on Petitioner, and do not serve to extend his confinement beyond the expected parameters of his sentence.  See <u>Sandin v. Connor</u>, 515 U.S. 472, 484-85 (1995).[3]  Petitioner also fails to show that the disciplinary sanctions imposed were arbitrarily applied or are unreasonable.  The sanctions are consistent with the applicable regulations and were not disproportionate to Petitioner's conduct.

---

[3]  Under certain circumstances, liberty interests may arise under the Due Process Clause or by operation of state law or regulations.  <u>Sandin</u>, 515 U.S. at 483-84.  <u>Sandin</u> also applies to Fifth Amendment claims involving federal prison regulations.  <u>Castillo v. FBOP</u>, No. 05-5076, 2006 WL 1764400, *3 (D.N.J. June 23, 2006), <u>aff'd</u>, 221 Fed. Appx. 172 (3d Cir. 2007).  Nevertheless, such liberty interests are implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment."  <u>Sandin</u>, 515 U.S. at 484-86.  Disciplinary action by federal prison officials in response to a wide range of misconduct is not atypical but rather, falls within the expected parameters of a sentence imposed by a court of law.  <u>Id</u>. at 485.

5. *Double Jeopardy Claim*

Petitioner also argues that his receipt of two incident reports for the same offense violates the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Three separate guarantees are "embodied in the Double Jeopardy Clause: It protects against a second prosecution for the same offense after acquittal [or mistrial], against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306-07 (1984); see also Illinois v. Vitale, 447 U.S. 410, 415 (1980). Thus, the threshold question under a double jeopardy analysis is whether the challenged provision imposes "punishment." Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1253 (3d Cir. 1966).

However, the Fifth Amendment's proscription against double jeopardy does not apply to sanctions imposed as a result of prison discipline. See Lisenby v. Cohen, 2011 WL 251466, *6 (D.S.C. Jan. 6, 2011); Teron v. Kupec, 2001 WL 34698403 (D.Md. July 30, 2001), aff'd, 48 Fed. Appx. 79 (4th Cir. 2002). Therefore, the Double Jeopardy Clause does not apply to repeated disciplinary proceedings. Id.; see also Meeks v. McBride, 81 F.3d 717, 722 (7th Cir. 1996)(acquittal in earlier prison disciplinary proceeding did not bar subsequent hearing to

consider the same charge); <u>Garrity v. Fielder</u>, 41 F.3d 1150, 1152-53 (7th Cir. 1994)(prison discipline not prosecution for double jeopardy purposes, even where disciplinary sanction delays prisoner's release from prison by loss of good conduct time), <u>cert</u>. <u>denied</u>, 514 U.S. 1044 (1995).

Here, Petitioner was sanctioned only once by the DHO for the Code 108 violation.  The sanctions were imposed after his only DHO hearing on August 16, 2007.  The second report was merely a re-write of the original incident report after new information was received.  Petitioner did not have any adjudication as to the Code 108 conduct before August 16, 2007.  Moreover, he received sanctions for the Code 108 violation only once, and was never subjected to additional sanctions.  Therefore, this double jeopardy claim is without merit.

<u>**CONCLUSION**</u>

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge

Dated:      **January 27, 2012**